UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CINDY BELEC, as next friend of
JORDAN BELEC,

      Plaintiff,

v.                                                                        Case No. 2:07-cv-79
                                                                          CONSENT CASE
BCI BURKE COMPANY, LLC,

      Defendant.
_____/

**OPINION**

Plaintiff Cindy Belec filed this lawsuit on behalf of her son, Jordan Belec. Jordan Belec broke his leg after falling from playground equipment at the Daggett Elementary School. Defendant BCI Burke Company, LLC, a Wisconsin company, removed this action from the Menominee Circuit Court based upon diversity jurisdiction. Jordan Belec was six years old and in kindergarten within the Stephenson Public School District. On April 18, 2005, Jordan was playing tag on the fan climber which was designed and manufactured by defendant BCI Burke Company, LLC. The fan climber is a series of circular steps. Each step is made out of diamond plate metal that has three holes designed for gripping and water drainage. The platform at the top of the steps is made out of punched steel. Jordan was running from the top of the fan climber down to the ground when his shoe got caught in one of the openings on a step. Jordan fell off the step and landed on his back. As a result, Jordan sustained a broken leg. There may exist some dispute as to whether Jordan actually caught his foot in the opening of the step or whether he simply fell from the step. For purposes of this motion the Court will assume that Jordan's foot became stuck in the step opening, causing his fall.

Plaintiff asserts that an alternate design was feasible at the time the fan climber left defendant's possession and that the product as designed was dangerous for its foreseeable use because the openings on the steps of the fan climber were large enough to trap a child's foot. Plaintiff asserts that defendant should have used punched steel coated with PVC for the step surface. As a result of defendant's negligence, Jordan Belec suffered a spiral fracture of his left tibia. Defendant has moved for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The parties are in agreement that Michigan law applies. Michigan has adopted a "risk-utility" test for determining whether a plaintiff can survive a motion for summary judgment in a product liability case. *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W. 2d 176, 186 (1984); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982). Michigan courts have decided that negligence and breach of implied warranty product liability claims against a seller who is also the manufacturer essentially involve an identical analysis. *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731. 736-37 (6th Cir. 2000). It is the plaintiff's obligation to overcome a motion for summary judgment by showing:

> (1) that the severity of the injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (2) that the likelihood of occurrence of her injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (3) that there was a reasonable alternative design available;
>
> (4) that the available alternative design was practicable;
>
> (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and
>
> (6) that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617-618 (6th Cir. 2001), citing *Hollister* at 738.

Defendant argues that the fan climber was not defective and points to the deposition testimony of plaintiff's own expert witness and defendant's expert witness as support. Defendant's expert witness indicated that diamond plate steel was proper for the steps and commonly used in the

industry because of its slip resistance.  Defendant has characterized plaintiff's expert testimony as concluding that there was really nothing wrong with the design of the fan climber.  Defendant states that plaintiff's expert testified that if he performed a safety audit of the fan climber, he would not be able to fail the design and that the fan climber passed all ASTM standards and CPSC guidelines.  Plaintiff's expert stated that punched steel was an option for the steps, but that he had no criticism of the metal that was actually used on the steps.  More specifically, plaintiff's expert testified:

> A      As I mentioned, the platform, the large platform form was made out of expanded metal or punched steel, however you want to term it.  I used to make them that way, too.  And you just weld angle iron onto it and then send it off to get it dipped in a liquid rubber or PVC.  And that was just an alternate design that could have been used for this stepping form.
>
> Q      The actual step?
>
> A      Right.  "Stepping form" is a bad term.  Because there are -- is a product called a stepping form.  But the step of the Fan Climber, right.
>
> Q      And you're not criticizing the step.  You're simply saying that there was another way that it could have been done?
>
> A      Right.
>
> Q      And on the next one the allegation is that the -- and I'm paraphrasing here -- the product, the Fan Climber was unreasonably dangerous for it's foreseeable use by incorporating openings in its Fan Climber that were large enough to entrap a child's foot.  Do you have an opinion regarding that allegation?
>
> A      Well, I'll let Mr. Clark argue whether it was unreasonably dangerous or not.
>
> Q      Well, what opinions do you have regarding the openings in the -- now, the allegation in the Complaint says opening in its Fan Climber.  Are we talking about openings in the step?  Is that what we're talking about?
>
> A      I believe so, yes.

- 4 -

  Q All right. And as far as any openings in the step, do you have any opinions regarding the openings in the step?

  A Well, after reading Scott Liebelt's deposition and his answer as to why they used that material and why they had openings there, uh, he stated that the openings at the outside of the corners of the step allowed for the child to grip by their hands and that the diamond plate steel is far enough away so that they don't scrape their knuckles as they are climbing up. So I don't see any problem with that. The opening on the inside corner where the main support post is, there's an opening there, too. It's a smaller opening from what I can see. The only purpose I can see in that is not for climbing or hand-gripping, but would possibly be for drainage.

  Q It certainly could be used for handhold if someone was going up the Fan Climber steps?

  A No, I don't think so. Because you got the center pipe, the support pole that the frame of the step is welded to. So I don't think a child would grip there. I think they will grip the center post or some other suitable hand-gripping component.

  Q Do you have any criticism of the step, the opening that's adjacent to the center pole?

  A Well, actually, if the decision to use diamond plate steel is concluded to use as a step on this climber, then I would say you need to have that hole there for drainage. Because if it's installed at a slight angle to where that's where the water runs off, then it would need to drain. That's one of the rules of the standards and guidelines. So I -- for that purpose, I would say it would need to be there. But no other reason. So if they had used expanded metal or perforated steel, or what have you, like the deck platform is, then they wouldn't have that opening there. They would just have openings all over the place on expanded metal because it's perforated.

  Q And the use of the perforated versus the diamond steel is just an option.

  A Right.

Deposition of Scott Burton at 49-52.

Further, plaintiff's expert did testify that the fan climber would pass a safety audit:

> A    Well, when I first took this case I thought that it was a slip-and-fall off the steel part of it, and I came to find out that it wasn't. And so with that said, I looked at this design and if I were to do a safety audit on it, I wouldn't be able to fail it for a violation of the standards or guidelines because it does -- it does pass. Only because, like I mentioned earlier, there's no -- nothing stated in the standards or guidelines that says this is how far apart those drainage holes have to be. So if I were to fail it, then the owner and Burke, in this case, would say but it's got drainage designed into it, and I really wouldn't have a leg to stand on, on that one.

Deposition of Scott Burton at 85.

Plaintiff has not set forth any evidence to support step 1 or step 2. Plaintiff has submitted some evidence regarding the number of falls from playground equipment. Plaintiff has presented nothing regarding the likelihood of a child getting a foot caught in a drainage hole on the step causing a fall and a broken leg. There is no evidence that could show this injury was likely at the time the fan climber was placed in commerce. Plaintiff has shown that there existed a reasonable alternative design by using punched steel instead of the slip resistant diamond steel. Plaintiff's own expert, however, testified that punched steel was an "option" and that he could not criticize the decision to use the slip resistant diamond plated steel for the steps. Moreover, plaintiff has presented no evidence that using punched steel would have reduced the incidence of foreseeable risk. If the Court considers the foreseeable risk as falling from the fan climber steps, there has been no testimony or evidence presented which could show that the use of punched steel over the slip resistant diamond plated steel could limit that risk. Further, there has been no testimony or evidence presented that could show that defendant's failure to use punched steel on the fan climber steps made the fan climber not reasonably safe. In fact, a fair reading of plaintiff's own expert's deposition testimony establishes that the fan climber was reasonably safe. Plaintiff's expert could not find

anything wrong with the fan climber and certainly never made a statement that the fan climber was defectively designed or unsafe for children to use.  Plaintiff has failed to support her claim that the fan climber was defectively designed and that the use of slip resistant diamond steel instead of punched steel on the steps made the fan climber reasonably unsafe.

        Accordingly, defendant's motion for summary judgment will be granted and this case will be dismissed.

        /s/ Timothy P. Greeley  
        TIMOTHY P. GREELEY  
        UNITED STATES MAGISTRATE JUDGE

Dated:   July 24, 2008